PHYLLIS JEAN NELSON v. FORREST LeROY NELSON AND OTHERS.
HARDY SALT COMPANY, RESPONDENT.

166 N. W. (2d) 70.

February 28, 1969—No. 41300.

*Nord, Webster & Brennan* and *Joseph H. Rivard,* for appellant.
*Swanson & Christoffersen,* for respondent.

MURPHY, JUSTICE.

This is an appeal from an order of the district court denying a new trial after a directed verdict for defendant. The case involves liability of an employer for damages alleged to have been sustained by the wife of an employee while a passenger in her husband's automobile. The trial court was of the view that the husband was not acting within the scope of his employment when the injuries were sustained.

From the record it appears that plaintiff, Phyllis Jean Nelson, is the wife of Donald C. Nelson, who at the time of the accident was a salesman employed by defendant Hardy Salt Company. While a desk in the office of his employer in Minneapolis was available for his use, for the most part he worked out of his home in White Bear Lake. His duties were to call on the trade, sell salt, and otherwise advance his employer's interests. His appointments were normally prearranged either by the company or himself. On a normal day he would not go to the company's office but would go directly from home to his first call. He received his mail at home and kept his files and records there. He used his personal automobile in his work. He was compensated on a commission basis, but the employer paid him $5 a day for gasoline and $12 a week as depreciation on his automobile.

It appears from the record that on the morning of February 22, 1965, the employee had an appointment to call on a customer, Lindsay Soft

Water Company, located on Arcade Street in St. Paul, Minnesota. His wife, who was 8 months pregnant, had an appointment with her doctor in downtown St. Paul on the same morning. Nelson's version of the facts was that on this particular morning he intended to call at the offices of the Lindsay company where he would leave his wife and that she would continue on to the doctor's office by bus. On the way from White Bear Lake to St. Paul, an accident occurred resulting in serious injuries to Mrs. Nelson. It is agreed that the trial court was correct in determining that the accident was caused by the negligence of plaintiff's husband. It is not disputed that the shortest route from plaintiff's home at White Bear Lake to the doctor's office in the Medical Arts Building in St. Paul would take the Nelsons along Arcade Avenue where the Lindsay company has its place of business.

During the course of the trial, on cross-examination of Donald Nelson, it developed that he had on previous occasions given versions of the events of the morning which were inconsistent, if not contradictory. In his original report to his insurance company, he stated that the purpose of the trip was to drive to St. Paul so that his wife might keep her weekly doctor's appointment. In a subsequent deposition, he indicated that he intended to take his wife to the doctor and then return to the Lindsay company for his appointment. In a later deposition he said that he might have his wife take a bus from the Lindsay company location if time would allow. At the trial he testified that it was his plan and intention to stop at the Lindsay company to make a business call and that his wife would proceed from there by bus.

The trial court concluded from these varying accounts that the testimony of Mr. Nelson was inherently improbable and that, at the time of the accident, he was not acting for his employer but was engaged in a family errand. In oral argument, counsel for defendant contends that the trial court was correct in determining that the testimony of Nelson was inherently improbable, arguing that it would not be likely to expect Nelson to leave his wife and 4-year-old daughter at the Lindsay office to wait for a bus on a cold morning, that no arrangements were made for Mrs. Nelson's return trip home, and that he did not make a claim for gasoline allowance on the day of the accident or for any day during that

week, although he did receive his regular expense allowances. Defendant attacks the corroborating testimony of the employee for the Lindsay company who testified that Nelson had an appointment to make a customer call on the morning in question. Defendant contends that the testimony of this witness was "impeached" because he did not recall the exact hour of the appointment.

The law of this state, as it bears upon the liability of an employer for the negligence of an employee driving his own vehicle while acting within the scope of his employment, is fully discussed in Boland v. Morrill, 270 Minn. 86, 132 N. W. (2d) 711, an action by a passenger in an automobile against the driver of a second car and his alleged employer for injuries sustained in a collision between the automobiles. It is unnecessary to again review the authorities which are gathered and discussed in that case beyond saying that the employer is not relieved from liability for the employee's negligence merely because the employee is using his own vehicle at the time of the accident. The employer is not liable where at the time of the injury the employee is not acting within the scope of his employment, and a substantial detour or deviation in time as well as place may relieve the employer from liability. But where the deviation is only slight or incidental, or where the deviation has ended, the employer will be liable for an injury occasioned by the negligence of the employee while acting within the scope of his employment. Where the evidence is disputed as to whether an employee is within the scope of his employment at the time of the commission of the tort, a fact question for the jury is presented. In determining that issue, it is necessary that the employee's conduct at the time of the commission of the tort must be actuated at least in part by a desire to serve the employer in order for him to be within the scope of his employment.

It seems to us, on the basis of the record, that the jury might find that on the day the accident occurred the employee was in the service of his employer and intended in furtherance of his employer's interests to make a business call on the Lindsay company, one of the employer's customers. The trial court was of the view, however, that the statements made by the employee compelled the conclusion that at the time the accident occurred the employee was engaged in a personal errand unrelated to his

employment. This conclusion arose, apparently, from his determination that Nelson's version of his relationship with his employer at the time of the accident was not worthy of belief.

■ In considering the propriety of a directed verdict under the circumstances, it should be kept in mind that a motion for a directed verdict admits the credibility of the evidence for the adverse party and every inference which may be fairly drawn therefrom, and also that on such a motion the evidence must be viewed in the light most favorable to the party opposing the motion. Mayzlik v. Lansing Elev. Co. 241 Minn. 468, 63 N. W. (2d) 380; Hanson v. Homeland Ins. Co. 232 Minn. 403, 45 N. W. (2d) 637; and 19 Dunnell, Dig. (3 ed.) § 9764. See, also, 88 C. J. S., Trial, § 259.

■ While there may be a basis for the trial court's disposition to believe that the statements given by the witness were contrived to establish a basis for imposing liability on the employer, it seems to us that under the circumstances such considerations are best left to the jury. The situation here is comparable to the credibility problem that arose in the case of Ryan v. Griffin, 241 Minn. 91, 62 N. W. (2d) 504. In holding that it was error for the court to direct a verdict in that case, we said (241 Minn. 98, 62 N. W. [2d] 509):

"In cross-examination defendants were successful, as is frequently the case, in developing inconsistencies in plaintiff's direct testimony as to the speed at which he was traveling, the distance which he maintained between his automobile and the Engel car, the kind of lookout which he was keeping, and other matters unnecessary to detail here. However, on a motion by defendant for a dismissal or directed verdict, the credibility of the evidence and every inference which may be fairly drawn therefrom must be viewed in the light most favorable to the plaintiff. It is not for the trial court to accept a part of the testimony of a witness and reject the remainder. That is the province of the jury, the jury being the exclusive judges of the evidence and the credibility of the witnesses."

The credibility of a witness is not necessarily destroyed so as to render his entire testimony unworthy of belief by the fact that he has given a series of statements which may vary in specific detail.

It seems to us that on the basis of the entire record, including the previous statements of the witness, the jury could consider whether the trip was made solely to serve the employer; whether the trip involved a dual purpose; or whether he had no purpose to serve his employer. If the employee intended to serve the dual purpose of taking his wife part way to the doctor's office and leaving her at his customer's place of business, he was still within the scope of his employment. Since the accident happened on a direct route between his home and his first business call, it could not be known at that point whether it would be necessary for him to deviate from his employment or not. In Frankle v. Twedt, 234 Minn. 42, 50, 47 N. W. (2d) 482, 488, we said:

"* * * As a matter of tort law, if a servant in the use of a motor vehicle combines his own business with that of the master and is not using the vehicle exclusively for his own ends, but is using it at the same time for his master's business in the service for which he was employed, the master is nevertheless liable for the servant's negligence. Where a servant is allowed by his master to combine his own business with that of the master, or even to attend to both at substantially the same time, no nice inquiry will be made as to which business the servant was actually engaged in when a third person was injured by his negligence. [Citation omitted.] If, as distinguished from a slight deviation, a servant, however, totally abandons his master's business for a purpose exclusively his own, or if his movements are not actuated to any appreciable extent by his master's business, the master is not liable for his negligence."

We conclude that the variations in the statements of the witness Nelson are not so conclusively inconsistent or contradictory as to compel the conclusion that the witness' lack of truthfulness warranted a directed verdict. It cannot be expected that statements given by a witness at different times and under different circumstances must conform in every detail. It is for the jury to pass upon the credibility of the witness. Fulsom v. Egner, 248 Minn. 156, 79 N. W. (2d) 25.

Reversed and new trial granted.