**Mary GRISIM, Respondent,**

v.

**TAPEMARK CHARITY PRO–AM GOLF TOURNAMENT, et al., Southview Country Club, Respondents,**

**Gene Koecheler, Petitioner, Appellant.**

**No. C9–86–706.**

Supreme Court of Minnesota.

Dec. 4, 1987.

Mary C. Cade, Minneapolis, for appellant.

Scott D. Eller, Minneapolis, for respondents.

AMDAHL, Chief Justice.

We granted the petition of defendant Gene Koecheler to review that portion of the court of appeals' decision reversing the trial court's award of summary judgment in Koecheler's favor. We reverse in part and reinstate the order of the trial court granting summary judgment with respect to Koecheler.

Plaintiff Mary Grisim attended a charity golf tournament sponsored by TapeMark Charity Pro–Am Golf Tournament and TapeMark Company (TapeMark), and held at Southview Country Club (Southview). At the 18th hole, Grisim sat down under a tree to the left of the green after seeing the bleachers behind the green, a designated area for spectators, were very crowded. Koecheler, an amateur golfer playing in the charity tournament, hit his tee shot on the par three, 18th hole. The ball hooked left and struck Grisim in the left eye. Tragically, Ms. Grisim's left eye had to be removed due to the injury.

Grisim filed suit against TapeMark, Southview, and Koecheler. The defendants moved for summary judgment. The trial court granted summary judgment on the basis of the primary assumption of risk doctrine. The trial court found that Grisim chose to sit under the tree instead of the designated area behind the green and, in doing so, assumed those risks inherent in a golf tournament, including being hit by an errantly struck golf ball.

The court of appeals reversed the trial court's award of summary judgment, concluding that factual issues remained as to whether TapeMark or Southview provided adequate protection for spectators. The court also reversed with respect to Koecheler, concluding that the trial court erred when it applied the same duty of care to Koecheler as it did to TapeMark and Southview. *Grisim v. TapeMark Charity Pro–Am Golf Tournament,* 394 N.W.2d 261 (Minn.App.1986).

■ We disagree that any factual issues remain with respect to Grisim's claim against Koecheler. We find that Grisim's claim against Koecheler is barred by the primary assumption of risk doctrine. In *Springrose v. Willmore,* 292 Minn. 23, 192 N.W.2d 826 (1971), we explained that, "[p]rimary assumption of risk, express or implied, relates to the initial issue of whether a defendant was negligent at all— that is, whether the defendant had any duty to protect the plaintiff from a risk of harm." *Id.* at 24, 192 N.W.2d at 827. We have previously held that the sole duty owed to a spectator at a baseball game is to provide a spectator with the choice of observing the action from a reasonably protected area or of assuming the risk and sitting in an area less protected from the inherent dangers of the sport. *See Wells v. Minneapolis Baseball & Athletic Ass'n,* 122 Minn. 327, 331, 142 N.W. 706, 708 (1913). We find that the reasoning of that case applies equally here, and that the only duty owed to Grisim was to provide her with a reasonable opportunity to view the participants from a safe area. The court of appeals held that factual issues remained as to whether TapeMark and Southview, sponsors and organizers of the tournament, took adequate steps to provide a sufficiently protected viewing area for the public. We do not address the court of appeals' decision with respect to those parties, since TapeMark and Southview did not seek review of the court of appeals' decision. The duty to provide adequate areas for the public, however, could not possibly extend to Koecheler, an amateur golfer who was merely playing in the tournament. He had no control over the arrangements for spectators and therefore breached no duty to Grisim.

■ The court of appeals held that factual issues remained as to whether Koecheler breached a separate duty by failing to shout a warning to Grisim and others in a possible zone of danger. The court cited our decision in *Hollinbeck v. Downey,* 261 Minn. 481, 113 N.W.2d 9 (1962), to support the conclusion that appellant may have had a duty to warn. We find *Downey* distinguishable from the present case. In *Downey,* the plaintiff Hollinbeck was a caddie

retrieving golf balls on a practice fairway when he was injured by a golf ball hit by defendant Downey. We stated that if defendant Downey "knew, or in the exercise of ordinary care should have known, that plaintiff was in a zone of danger and was unaware of Downey's intention to hit, Downey should have given [plaintiff] a warning." *Id.* at 486, 113 N.W.2d at 12–13. We find as a matter of law that Koecheler could not have had any knowledge whether Grisim was aware that he was teeing off. In fact, it is reasonable for Koecheler to have assumed that spectators as close to the playing area as where Grisim was sitting would be observing the play of the golfers. We believe the reasoning of *Downey* is more appropriate in the context of regular play or practice, where golfers should be obligated to warn their preoccupied fellow golfers, than in the context of a tournament involving spectators who are there to observe play and have assumed the risks of straying too close to the playing area.

We conclude that Koecheler had no duty to yell a warning and that the primary assumption of risk doctrine bars any recovery by Grisim against him. The decision of the court of appeals is reversed with respect to Koecheler and the trial court's award of summary judgment for Koecheler is reinstated.

Reversed in part and summary judgment for Koecheler reinstated.

POPOVICH, J., took no part in the consideration or decision of this case.